### 10413

#### J. L. MOTT IRON WORKS v. KAISER CO. *ET AL.*

#### (103 S. E., 783)

1. CORPORATIONS—CORPORATION HELD TO HAVE ADOPTED A CONTRACT MADE BY ITS PREDECESSOR.—Where a corporation succeeding a firm conducted correspondence in part on the firm letter heads, and per-

---

Note: This case was taken on appeal to the U. S. Supreme Court under the title of *First National Bank of Aiken v. J. L. Mott Iron Works.* The opinion of the South Carolina Supreme Court was there affirmed. See 254 U. S., 627; 258 U. S., 240; Publication of the South Carolina report was delayed pending decision of the U. S. Supreme Court.

formed the only contract made by the firm with another, it will be deemed to have adopted the contract and to be bound.

2. EVIDENCE—NOTATIONS ON RECORD KEPT BY FREIGHT AGENT IN COURSE OF BUSINESS ADMISSIBLE DESPITE HEARSAY RULE.—In an action for the purchase price of materials, where defendant set up plaintiff's delay in delivery, a record kept by the freight agent at the point of delivery, showing that shipments had laid in the railroad office for considerable periods, and that defendant in several cases paid demurrage, is admissible, despite the hearsay rule.

3. EVIDENCE—ONE FAMILIAR WITH HANDWRITING MAY TESTIFY THERETO TO RENDER RECORD ADMISSIBLE.—Where the clerk who kept the record in a freight office, showing that defendant failed to promptly remove shipments, was absent, another clerk familiar with his handwriting may testify as to the genuineness of the notations, for the purpose of rendering the record admissible.

4. EVIDENCE—PARTY BOUND BY TELEPHONE COMMUNICATION OF ARCHITECT.—Where defendant's witness testified the work was delayed by plaintiff's failure to send slip joints, and that the witness referred the matter to the architect, plaintiff's witness, who testified that, on being informed, he made a special order for the same, may testify that he was notified thereafter over the telephone by the architect that the parts had been secured elsewhere.

5. SALES—LETTERS HELD NOT RELEVANT TO ISSUES RAISED AND PROPERLY EXCLUDED.—In an action for price of material sold, letters by an agent relating to the orders which were in no wise relevant to the issues raised by the pleadings are inadmissible.

6. SALES—CONTRACT FOR DELIVERY F.O.B. AT SELLER'S PLACE OF BUSINESS NOT CHANGED BY CONSTRUCTION OF PARTIES. Where a written contract provided for delivery f.o.b. at seller's place of business, the fact that in case of claims against the carrier the bills of lading were sent to the seller, and it made the claims, does not show a change in the contract as to when buyer should become liable to pay for the goods.

7. GUARANTY—WHERE A BANK GUARANTEED PAYMENT OF AN ACCOUNT IT WAS LIABLE FOR INTEREST.—Where a bank guaranteed payment of an account for goods sold, the bank was liable for interest from the date on which the debtor was due to pay for the goods, although the amount of the account was specified in the guaranty; it further appearing that the bank was notified as to the terms of payment.

8. SALES—A CHARGE, LIMITING THE PARTIES TO THE DATE FIXED FOR DELIVERY, PROPERLY REFUSED.—Although plaintiff agreed to deliver goods on October 1st, yet where there were numerous other dealings after that date, a request to charge, in an action for the purchase price, limiting delivery to October 1st, was properly refused.

9. Trial—Charge Held Not One on the Facts.—In an action against a buyer and a bank which guaranteed payment of the account, a charge that, in order to reach the bank, the jury must find against both defendants, and that, if it found against the buyer and not against the bank, that would exonerate the latter, held not a charge on the facts.

10. Sales—Contract Held Not One to Ship Within Three Days.— The mere fact that, during negotiations, the seller stated to a third person that it could ship in three days on satisfactory guaranty did not make contract of sale one to ship the goods within three days.

11. Banks and Banking—Cashier's Contract of Guaranty Held Binding on Bank.—Although a bank generally is without the power to guarantee payment of an account, yet, where a customer had arranged credit, and it had also been arranged that payments due on a contract undertaken by the customer should be made to the bank, a guaranty by the cashier to pay for materials necessary to carry out the contract is binding.

Before Wilson, J., Aiken, October, 1919.   Affirmed.

Action by J. L. Mott Iron Works against Kaiser Co. and First National Bank.   From a judgment for plaintiff defendants appeal.

The requested charge, which was refused follows:  If the jury find that it was the understanding of the parties when they took the order, either an express understanding or an implied understanding, that the goods were to be delivered October 1, 1916, and that they were to be paid for cash or on credit, the plaintiff should have made the delivery.  It could not wait until after the time to perform and then try to make new arrangements and escape liability if it caused damages.  If you should so find on these questions, as to time of delivery, and if the plaintiff failed to do as it agreed, if it did so agree, and if damage resulted, the plaintiff would be liable to the defendant Kaiser Company for such damages as naturally flowed from such breaking of their agreement to deliver.

*Messrs. D. W. Gaston, Jr.,* and *John F. Williams,* for appellant, cite:  *Suit was on a guarantee:* 77 Fed., 134. *National Bank has no authority to act as guarantor:* 79 Pac.

St., 106; 111 U. S., 156; Thompson Corp. Sec., 4754-55; 87 Fed., 430; 82 Fed., 799. *Cashier cannot bind bank beyond scope of authority:* 7 C. J., 787. *Bank can only be held for amount actually received by it out of the money loaned:* 216 U. S., 201; 190 N. Y., 417; 139 U. S., 24. *Estoppel not good against ultra vires act of National Bank:* 3 R. C. L., 455; 65 A. S. R., 206; 45 L. Ed., 1007; 50 L. Ed., 328; 42 L. R. A., 200; 41 L. Ed., 820; 43 L. Ed., 1010.

*Messrs. Hendersons,* for respondent, cite: *Bank has no power to make a guaranty except for the protection of its own rights or as an incident to the transaction of its own business:* 87 S. C., 387; 92 U. S., 127; 152 U. S., 231; 231 U. S., 140; 167 U. S., 367; 200 U. S., 425; 202 U. S., 300; 223 U. S., 510; 231 U. S., 140; 77 Fed., 85; 60 S. W., 828; 96 U. S., 351; 139 U. S., 68; 218 U. S., 27; 216 U. S., 200. *Authority of cashier and estoppel:* Thompson Corp. Sec., 5258; 10 Wall, 644; 152 U. S., 352; 229 U. S., 521.

June 28, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The plaintiff had a verdict and judgment against the defendants for $2739.42, and they have appealed.

The cause of action against Kaiser is upon an account for goods sold; and against the Bank upon a paper writing made to guarantee payment of that account, and of the following purport:

"Aiken, S.C., 12:12 P. M.,
"December 2d, 1916.

"J. L. Mott Iron Works, New York:

"We guarantee payment amount twenty-three hundred sixty-three dollars fifty cents account Kaiser Company shipment under contract for hospital at Aiken.

"First National Bank of Aiken."

The writing was made by Durban, the cashier of the Bank, admittedly without the express authority of the Board of Directors to do so, and issuably with the authority of the Bank's president to do so.

The execution of the paper writing arose out of the following recited circumstances most of them admittedly true: there was building in Aiken a hospital; McGhee had the contract to build; on the 16th August, 1916, McGhee made a contract with Kaiser to install a heating and plumbing system in the building for $7,800.00; Kaiser had made arrangements with the Bank to borrow money to do this work at the Hospital; the aforementioned contract of 16th August, 1916, was on the day of its execution transferred by Kaiser to the Bank; and concurrently McGhee agreed to that transfer, and further agreed that the payments which should be due by McGhee to Kaiser on the performance of the contract, should be made directly to the Bank instead of to Kaiser. On the 16th August, the Bank made a loan to Kaiser to assist Kaiser to perform the contract, and five other loans were made, all in August, September and October, and aggregating $4,700.00; Kaiser contracted to buy from the plaintiffs from October to January both inclusive, goods with which to do its job, and of the value of $2365.50; Durban knew that the goods so supplied were necessary to the accomplishment of the job, and the loan was made to Kaiser to help him perform the job; the plaintiff declined, evidenced by its telegram to McGhee, to ship to Kaiser the goods contracted for unless the payment for them should first be guaranteed; upon presentation of that telegram by Kaiser to the Bank the instant guarantee was executed; the Bank consented that as much as $5,468.00 due by McGhee to Kaiser on the job, should be diverted from the Bank, contrary to the aforementioned agreement between the Bank, Kaiser and McGhee, and be paid directly to Kaiser.

These are the essential facts of the case, and out of them arises any liability of the Bank on its guarantee.

That is the major issue to be decided; all the other issues are of a minor character and most of them are between the plaintiff and Kaiser; none of them go to the justice of the cause so as to determine it.

It will be enlightening, however, to first dispose of such of the minor issues as need attention.   The appellant's counsel has wisely and helpfully grouped in the brief the 21 exceptions under ten heads, and we consider these heads.

1    There is no merit in the view that the aforementioned contract of 16th August, betwixt McGhee and Kaiser and the things done under and pursuant to it did not bind the Kaiser Company, the defendant corporation, only created on 22d August.   The copartnership was made up of Kaiser and Weatherford; the corporation was owned by the same men and Oliveros; and the last named testified that the corporation had no contract with McGhee other than that of 16th August, and he knew of that contract.

Manifestly therefore the corporation adopted the contract which the copartnership had entered into.

The Kaiser Company also conducted its correspondence in part on the letter heads of Kaiser and Company and that tended to show a succession of interest.

2, 3    The Kaiser Company plead in defense of the plaintiff's action and offered testimony to prove it, that the plaintiff had greatly delayed the Kaiser Company in the performance of its contract by delaying shipments of material.

The plaintiff replied to that in evidence that five shipments of material to the Kaiser Company had laid in the R. R. office at Aiken for many days, and that on three of them the Kaiser Company had even paid demurrage charges for as long as eighteen days.

The exception is, not that the testimony was irrelevant, for it was relevant; but that the evidence of the facts lay in pencil notations made by one Smith, Station Agent of the R. R. Co., on the books of the Company and on the receipts which the Kaiser Company signed to the Company for the goods.

The notations were testified to by Williams (Smith being out of the State), who was not the Station Agent of the R.

R. Co., but who had been working in the freight office for two years and who knew Smith's handwriting.

The testimony of Williams was competent.

The fact to be proved rested in a record, made in the due course of business, and the record was proof of the fact.

True the record was hearsay, but the instance is one in which hearsay is accepted.

True too that the record had to be vouched for out of the mouth of a witness; it is not denied that Smith who made the record was competent to swear to it. But so could Williams also, for all that Smith could say was that the entry was genuine, and Williams also said so much.

See 2 Wigmore, Sec. 15-25.

2 Jones, Sec. 320.

Another exception goes to the testimony of the plaintiff's witness McGowan.

McGhee a witness for the defendant had testified that the work of Kaiser Company had been greatly and hurtfully delayed by the failure of the plaintiff to send certain slip-joints and ells; and that witness referred that matter to the architect.

McGowan in reply testified that the slip-joints and ells were not a part of the order; nevertheless that when Mc-Ghee wired the plaintiff to send those articles he directed the factory by wire to make a special order for them; but that before the same could be executed the witness got a phone message from the Architect's office saying that McGhee had secured the parts elsewhere and to stay any further effort to supply the parts.

The point of the exception is, that the phone message was a mere declaration.

But McGhee testified that he had referred the alleged shortage to the architect; therefore the phone message of the architect to McGowan was prompted by McGhee, and it was McGhee (in the person of the architect) speaking over the phone to McCullough.

McGhee cannot demand that his own voice shall be sworn to.  The testimony was competent.

Yet another exception goes to the exclusion by the Court of two letters addressed to Kaiser Company by one Horne of Atlanta, who was a representative of the plaintiff in that territory, and the person who sold the plumbing outfit which is the subject of this action.

These letters had to do with a heater for the hospital building which Horne therein proposed to supply; and the content of them is merely a description of a proposed heater and the price of it.

There is nothing in the letters relevant to the issues made by the pleadings; and the letters do not tend to prove aught save the contents above suggested.  They were of no probative value and the exclusion of them was proper.

The appellant contends further that the plaintiff contracted to deliver the goods at Aiken and not F. O. B. at Trenton, New Jersey; and that delivery was not so made.  That issue arises out of the charge of the Court, which was that when the plaintiff put the goods into the hands of the Common Carrier at Trenton, under a contract with the Kaiser Company expressed in the written order to sell it the goods, F. O. B. at Trenton, then that putting was into the hands of the Kaiser Company.

The appellant does not deny so much; but contends that the conduct of the parties towards each other in the execution of the sale shows that they intended that the goods should be put down at Aiken before the Kaiser Company should become liable to pay therefor.

The only two circumstances to which the appellant points to prove so much are these:  Weatherford testified, "when we would have a claim against the transportation company we forwarded to the plaintiff the original bill of lading and let them make claim"; and the Kaiser Company discovered on the packing sheets these words, "should there be any

shortage such must be reported to the J. L. Mott Iron Works immediately."

But it is plain that these circumstances only tend to show that the plaintiff intended to expedite a speedy performance of the contract of sale.

The Bank is plainly liable for interest from the day on which the Kaiser Company was due to pay for the goods.

That was the primary contract; and the guarantee was secondary to it. The telegram guaranteed the payment of a specific amount it is true; but when was such payment to be made?

Manifestly when the debt of Kaiser Company to the plaintiff fell due, for the guaranty refers to the "shipment under contract for hospital."

But more than that, when the Bank sent the guaranty the plaintiff answered that "the terms of payment are thirty days from date of shipment or invoice"; to that the Bank replied, "the terms of payment stated * * * are understood and satisfactory."

Let the defendant's request to charge printed at folio 366 of the case be reported; it was refused, and that is a ground of exception.

It is true that had the plaintiff contracted with the defendant Kaiser Company, to deliver the goods certainly on 1st October; nothing else being done by the parties thereabout, then the plaintiff would be held to the strict performance of the contract.

But the testimony abundantly shows that there was much else done thereabout by both the parties after 1st October; and for that reason the Court was wise not to hold the litigants down arbitrarily to a fixed date of delivery.

When the Court had concluded the charge this colloquy took place: "Mr. Henderson: I ask that the jury be instructed that in order to reach the bank, a verdict must be found against both defendants.

The Court: Yes, sir, in order to reach the bank, gentlemen of the jury, you must find against both defendants. If you find just against the Kaiser Company and not against the bank, then that lets the bank out of it. That is a matter for you to determine."

The appellant's exception and argument thereabout is that so much "was a charge on the facts."

But the instruction plainly meant that before either party defendant could be held liable there must be a verdict against that party; and so much was not a charge on the facts.

And at the close of the charge this other colloquy occurred: "Mr. Williams: One other point in the other side, which I think was overlooked by counsel in the preparation of the requests. The Bank's position is that the Mott Company agreed to ship in three days. We want the Court to charge the jury that if they did not ship in three days they did not perform their part of the contract.

"The Court: I can't go into the facts. The jury has heard the contract."

This action of the Court is made a ground of exception.

But the plaintiff did not contract with the Kaiser Company or with any other person to ship in three days; that assumption arises out of a telegram sent by the plaintiff to McGhee and McGhee on 1st December, and reading as follows: "Reason on non-shipment is that we can get no answer to several letters written to Kaiser Company trying to arrange for guarantee of payment. Could ship in three days on satisfactory guarantee."

We revert now to the major issue first circumstantially set out.

The Bank is clearly liable on the guaranty. It is true that generally a Cashier, or for that matter any other agency of a bank corporation, has not the power to guarantee contracts of the instant character which third persons have entered into.

But circumstances alter cases, and the circumstances which

we before recited made a case where the Bank in law and in good conscience ought to respond.

It is plain that upon occasion it may be to the monetary interest of a Bank to guarantee the performance of a contract of others, the Bank may be in danger of serious loss, and the way to save itself may be to come to the rescue of those who have gotten into its doors. Such a guarantee is denominated a transaction incident to the performance of its business of banking; it falls into the way of the Bank, the Bank does not go out of the way after it.

That rule, applied to the circumstances of the case, vindicates the instant guaranty. We again advert to the circumstances.

The Kaiser Company were customers of the Bank; the Company had limited resources and had undertaken a "pretty big job"; it could supply the labor, but it could not supply, unaided, the material for the job; the Bank was in the business of lending money to its customers; it loaned money to the Kaiser Company, as much as $4,700.00 in the summer and fall of 1916, and on the day it made the first loan, and concurrently therewith and concurrently with the execution of the contract of 16 August (between McGhee and Kaiser), Kaiser transferred that contract to the Bank and concurrently therewith the Bank consented thereto.

The Cashier testified to the incident of making the guaranty. He said, "Mr. Oliveros, an officer of the Kaiser Company, came to me with a telegram from plaintiff to McGhee and stated that this stuff was ready for shipment, and that it had to be guaranteed before he could get it out; that was the sense of it. After I got this information from Mr. Oliveros and while he was standing there with that telegram in his hand, I sent in the telegram guaranteeing the account. I don't know how long it was after that, but I think it was sometime during the same day"; and the Kaiser Company testified practically in the same words.

So that it is plain, the Bank wrapped up in its legitimate

business of loaning money to the Kaiser Company, and to secure those loans, the assigned contract of 16th August; and to get material to complete that contract, which it held, and to make it of some value, it guaranteed the payment of the purchase price of the material.

It would be idle to discuss the numerous cases which have been cited; there is no doubt about the general rule of law we have stated; the chief thing to be done is to apply that rule to the facts of this case.

The judgment is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HY-DRICK, WATTS and FRASER concur.