THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant, *v.* THE FARMERS NATIONAL BANK OF HUDSON, NEW YORK, Respondent.*

Third Department, January 14, 1937.

* Revg. 160 Misc. 510.

*Ainsworth & Sullivan* [*Charles B. Sullivan* of counsel; *Warner M. Bouck* with him on the brief], for the appellant.

*Hawver & Hawver* [*Robert E. Whalen* of counsel; *William C. Hawver* with him on the brief], for the respondent.

HILL, P. J. The plaintiff appeals from a judgment dismissing its complaint on the merits. As surety, it executed the official bonds for one Charles J. West, who was treasurer of the city of Hudson, N. Y., from January 1, 1923, to and including December 31, 1931, and who, between 1924 and 1930, stole more than $200,000 of city funds. The defendant, a national banking corporation, was the city depository during the time of West's peculations. The plaintiff paid the loss suffered by the city and became the owner, through subrogation and by a written assignment, of any cause of action the city had against the depository. This action was brought for an amount in excess of $70,000, but plaintiff now claims to be entitled to recover $58,416.24 made up of the following items: $37,776.93, withdrawals from money on deposit upon checks or drafts signed only by West; $20,383.51, city money not deposited in any account but which was received by defendant and for which it issued forty-three negotiable certificates of deposit payable to West and fictitious payees, which were cashed by West who stole the money; $255.80, which it is claimed the city would have received as interest upon the amount represented by the non-interest bearing certificates of deposit had it been deposited in the regular city accounts.

The city charter* provides concerning the selection of a depository that in each year following the election of a city treasurer the common council shall advertise for proposals from the banks of the city as to " the rate of interest which the bidder will pay to the city on the total daily balances standing to the credit of the city." The council is required to accept the offer " which it deems most advantageous to the city, and shall designate such bank or trust company as such depository for the term of three years beginning upon the first day of May next following." (§ 152.) The bank selected is required, prior to receiving any moneys, to execute and deliver to the clerk of the city a bond " conditioned that such depository shall faithfully keep such deposits, and shall on the last day of each month pay and account for the interest on such daily balances, at the rate in such accepted proposals stated, and shall faithfully pay all such orders as shall be drawn upon the treasurer of the city, and shall pay the same only on the order of the officials

---

* Laws of 1921, chap. 669.— [REP.

duly authorized." (§ 153.) The city treasurer is required to deposit in the city depository all city moneys held by him. (§ 71.) He is to pay out moneys " only upon drafts signed by the mayor and countersigned by the city clerk to pay audits and allowances by the common council, and by the officer or by the president of any board or commission entitled to draw the same and countersigned by its secretary, but no such draft shall be drawn by or in behalf of any such officer, commission or board except for the purpose of paying for services rendered or materials furnished to such officer, commission or board and after audit or allowance of the amount found to be due therefor by such officer, commission or board. A certificate briefly stating the date and amount of the audit and character of the claim audited shall be embodied in the draft, and the city treasurer shall not pay any draft that does not contain such certificate properly filled." (§ 73.) Defendant agreed in its proposals and bids " to pay 3.86% on the total daily balances standing to the credit of the city for the period May 1, 1923, to April 30, 1926, and 4.05% for the period May 1, 1926, to April 30, 1930." A draft that is an exhibit in the case will indicate the manner which was ordinarily adopted by the city officials in carrying out the provisions of the charter as to withdrawals of funds from the depository.

" Hudson, N. Y., *April* 1, 1930          Claim No. 4500
" *To the Treasurer of the City of Hudson, N. Y.*
   " Pay to the order of F. W. Konig .................... $1$\frac{00}{100}$
                                              Amount Audited
   Exactly $1 and 00 Cts................. Dollars
   Character of Claim Gas        CEMETERY COMMISSION
                                    " M. F. Troy
                                          " *President*
                  " Countersigned

                           " Florence A. Goffney,
                                          " *Secretary.*

          To
The Farmers National Bank of Hudson
   Pay the Amount of This Warrant To
      Claimant Named Herein
" Charles J. West,
   " *Treasurer City of Hudson.*"

(Upon the face of this exhibit appears the stamp of defendant showing payment on April 8, 1930.)

The $37,776.93 of city funds obtained from the depository on drafts or checks signed only by West, was taken from four cemetery accounts carried in the interest department of the bank as dis-

tinguished from the checking or commercial department. The first account was the "Perpetual Care Trust Fund." The moneys which made up this fund were transferred apparently from income on securities previously purchased from the "Cemetery Maintenance Trust," which is derived from the sale of lots or plots in the city cemeteries. The city treasurer is authorized to sell the lots and the moneys received therefrom "shall to the extent of fifty percentum thereof be placed by him to the credit of the commission of cemeteries, to be used by it for laying out, altering, beautifying, improving and preserving the cemeteries of the city." The remaining fifty per cent is to "be placed by the city treasurer to the credit of a fund, which shall be kept separate and apart from other moneys, and which shall be used for the payment upon maturity of any outstanding bonds of the city which have been issued for the purchase of lands for burial purposes or for the laying out, altering or improving of such lands. * * * If at any time all of such bonds of the city shall have been paid and discharged, then said fund shall be known as the 'Cemetery Maintenance Fund' and the city treasurer shall invest the same in such securities as the savings banks of this State are by law permitted to invest in. Said securities shall be purchased and held by the city treasurer in the name of the City of Hudson and shall be its property, and the income thereof shall be collected by him, and immediately upon collection be placed by him to the credit of the commission of cemeteries to be used by it for cemetery purposes. * * * The purpose of this section, among other things, is to provide for a perpetual fund for cemetery purposes." (§ 318.) The second of these accounts was the "Cemetery Maintenance Trust." Its source and purpose is shown by the above-quoted charter provision. Another was the "Interest Cemetery Account." Its source was income from the securities in the "Cemetery Maintenance Trust." The fourth was "Interest Accrued on Perpetual Care." Its source was income from securities in the "Perpetual Care Trust Fund."

West embezzled the moneys from these accounts by means of checks or drafts upon which he wrote as the maker or drawer the name of the particular account and his own name as city treasurer. The orders were not signed by any other city official and did not contain a certificate concerning the audit or purpose of the expenditure. These he presented to the defendant and received either cash, certificates of deposit or New York drafts, drawn by defendant payable to West or to persons not creditors of the city of Hudson and who had no transactions with the city or any of its officials as such. The first of these withdrawals was $3,000 on December 12, 1925, the last on May 2, 1930, when four drafts were drawn

exhausting each of the four accounts. West received $12,532.14 in cash. In addition, $4,000 was withdrawn on December 20, 1929, and on the following day a deposit of that amount was made in West's personal account. The bank was unable to produce the deposit slip and it does not appear whether this deposit was cash, a certificate of deposit or a draft. On June 14, 1929, West drew two drafts on the cemetery accounts aggregating $4,500. For these he received two certificates of deposit from defendant. One, for $1,500, in form a deposit by and payable to himself, was deposited in defendant bank on the following day in the bank account of a copartnership of which West was a member; the other, for $3,000, was deposited in the general fund account of the city. (This last amount is not included among his peculations.) With the proceeds of the withdrawal which exhausted all the accounts, West purchased from defendant two New York drafts, each payable to himself personally, one for $2,043.50, which was cashed a few days later by the defendant and credit therefor given to West in his personal account; the other for $1,000 was indorsed by West and by a theatre realty company in New York city, and paid there. With the withdrawals not specifically mentioned above, New York drafts were purchased from the defendant payable, in five instances, to " George Metzger " and one each to " C. L. Callahan " and " Thomas E. Barrett." These persons had no claims against or transactions with the city, if in fact such persons existed. These drafts were indorsed with the name of the drawee and in several instances by the same theatre realty company that indorsed the May 2, 1930, draft payable to West, and were finally paid by the banks in New York upon which they were drawn. Only two of the foregoing withdrawals, amounting to $2,304.50, were from the " Cemetery Maintenance " account in which the charter (§ 318) directed that one-half the proceeds from the sale of burial lots should be deposited. The funds in the " Maintenance " account, and those only, the city treasurer was directed to invest. In the other three cemetery accounts there was deposited only interest and income from the investments and securities purchased in former years from the " Maintenance " account. I draw this inference from the charter provisions (§ 318) and from the titles under which the accounts were carried. The charter directs as to these securities purchased, " Said securities shall be purchased and held by the city treasurer in the name of the city of Hudson and shall be its property, and the income thereof shall be collected by him, and immediately upon collection be placed by him to the credit of the commission of cemeteries to be used by it for cemetery purposes." (§ 318.)

In the conduct of defendant's banking business it issued non-interest bearing negotiable certificates of deposit upon a depositor's request in the form indicated by an exhibit in the case, viz.:

" $707.50    FARMERS NATIONAL BANK OF HUDSON

"HUDSON, N. Y. *Jan* 27 1927    191..

" Charles J. West City Treas has deposited in this Bank
the sum of $707 and 50 cts..................Dollars to the
credit of himself......................payable on the return of
this Certificate properly endorsed.

" No.  3150                    " PETER MESICK,
                                        " *Teller.*"

(On left margin, " Certificate of Deposit, not subject to check)."

(This exhibit is one of those upon which a recovery is sought. It was not indorsed but stamped " paid " by defendant on January 29, 1927.)    Money for which a certificate was issued was not credited to the depositor's bank account, but was shown as a bank liability in its certificate of deposit account.    This would be discharged by paying the amount named in the certificate to any person who presented it properly indorsed.    During the time that West was treasurer, he delivered to the bank over $200,000 of city funds which were not credited to the accounts of the city, but for which the defendant issued to him 271 certificates of deposit, each representing the amount which he delivered to the bank at the time it was issued.    The majority of these amounts undoubtedly came from tax collections.    Plaintiff seeks to recover the deposits represented by forty-three of these certificates.    One of them for $1,500 has been mentioned earlier, it having been obtained with the proceeds of a withdrawal from one of the cemetery income accounts and the certificate later deposited in the Traver & West bank account. The sum of money represented by these certificates, less the $1,500 which has been included in the cemetery account defalcation, is $20,383.51.    Three of these certificates, each issued during the month of March, 1927, were paid by the defendant on April first of that year and the money deposited on the same day in West's personal bank account.    One issued on June 7, 1927, for $758.44 was paid four days later and the money deposited in West's personal account which, prior to that deposit, was overdrawn $84.22.    The aggregate amount of these five certificates is $4,790.63.    (This includes the $1,500 from the cemetery income account.)    Appellant further calls attention that nineteen certificates aggregating $7,930.15 were paid, according to the records of the defendant, on days when no deposits were made in the city bank accounts, and that while five aggregating $2,914.44 were paid on days that deposits were made in the city general fund account, defendant's records

do not indicate these items were included in the deposits. As to the remaining fifteen, aggregating $6,405.89, the plaintiff says, and it is not controverted, that the records of the bank do not disclose the date when they were paid and argues that as the bank acted negligently and in violation of its contract obligations in permitting West to obtain these moneys, there was participation by it in the conversion; that the burden was upon the defendant to show, if it was the fact, that West later returned the money, payment being an affirmative defense; that as no evidence was offered on this subject, plaintiff is entitled to recover the item.

There was both an implied and a stated contract between the city and defendant. When money was deposited the relation of debtor and creditor was created. The defendant, the debtor, only could discharge its obligation by paying its debt to or upon the actual direction of the city, the creditor. (*Critten* v. *Chemical National Bank*, 171 N. Y. 219, 224; *Seaboard National Bank* v. *Bank of America*, 193 id. 26, 30.) The stated contract under which defendant was employed as depository of city funds is found in the proposal by the bank, its acceptance by the city, the bond given by defendant, and the statutes applicable. (*Matter of Niland* v. *Bowron*, 193 N. Y. 180; *Moore* v. *Mayor*, 73 id. 238, 245; *Parr* v. *Village of Greenbush*, 72 id. 463, 472; *Burns* v. *City of New York*, 121 App. Div. 180.) Section 153 of the charter requires that before the depository shall receive any money it shall execute, acknowledge and deliver to the clerk of the city a bond " conditioned that such depository shall faithfully keep such deposits, and shall on the last day of each month pay and account for the interest on such daily balances, at the rate in such accepted proposals stated, and shall faithfully pay *all such orders as shall be drawn upon the treasurer of the city*, and shall pay the same only on the order of the officials duly authorized." This language contemplates that the orders or drafts signed by the mayor and other authorized officers are to be delivered physically to the depository; that while they are drawn upon the treasurer, they are not to be held by him, but to be transmitted direct to the depository. The identity of the officials who may sign drafts or orders to justify the payment of money thereon is stated. " The city treasurer shall pay out said moneys only upon drafts signed by the mayor and countersigned by the city clerk to pay audits and allowances by the common council, and by the officer or by the president of any board or commission entitled to draw the same and countersigned by its secretary, but no such draft shall be drawn by or in behalf of any such officer, commission or board except for the purpose of paying for services rendered or materials

furnished to such officer, commission or board and after audit or allowance of the amount found to be due therefor by such officer, commission or board. A certificate briefly stating the date and amount of the audit and character of the claim audited shall be embodied in the draft * * *. The city treasurer shall prepare and furnish to the mayor and each officer, commission or board, who shall have money on deposit with him, uniform form of draft to be used by each of the same for the purposes herein provided, and no officer, commission or board shall use any other form of draft for the purpose of drawing funds from the city treasury." (§ 73.) Drafts could be drawn by the president and secretary of the cemetery commission upon its account, in which the city treasurer was required, immediately upon collection, to deposit the income from the securities purchased by him with the cemetery maintenance fund. (§ 318.) This income from bonds and real estate mortgages, which were substantially the only securities permitted under the charter, could have been identified easily, but if there was uncertainty, after an examination of the quite explicit charter provisions, as to the proper account in which to make the deposit and thus to determine the officials who might draw thereon, the matter should have been presented by the defendant to the common council which is the general representative of the city. (*Quincy* v. *Cooke*, 107 U. S. 549, 555.) The defendant was chargeable with knowledge of the charter provisions, and by permitting West to carry the income in improper accounts, did not obtain the right to pay the money out upon drafts not signed by the president and countersigned by the secretary of the cemetery commission. Such orders "were incomplete and improperly drawn." (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225, 231.) West had authority to draw orders or drafts for the $2,304.50 taken from the cemetery maintenance fund, but he could only withdraw this money for the purpose of purchasing securities and upon the " uniform form of draft," containing a statement showing " the date and amount of the audit and character of the claim audited." (§ 73.) When West made these two withdrawals (and all others), this requirement was waived by defendant. There was such a breach of the contract obligations by the defendant in connection with all the payments from the cemetery accounts that plaintiff is entitled to recover the amounts which West converted. (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, *supra*.) Defendant argues, however, that plaintiff is " estopped by carelessness " through failure of its assignor, the city, to audit West's accounts or to discover his defalcation in some other manner. (*National Surety Co.* v. *Manhattan Co.*, 252 N. Y. 247.)

The defendant received the money for which it issued the negotiable certificates of deposit with knowledge that it belonged to the city. Substantially each of the certificates recites that West as city treasurer made the deposit. This form of a deposit was in violation of the charter. The city treasurer was required to deposit all city moneys received by him in the designated depository. (§ 71.) The moneys could be paid out only upon drafts signed by the mayor and city clerk and the other officials mentioned. (§ 73.) The issuance to West of these negotiable certificates permitted the diversion of the city funds without the signature of the necessary officials. The defendant had contracted to act as city depository and when city money was delivered by an agent or official of the city, it was received under the contract made between the parties. The bank neither had the right to pay it out except under the lawful direction of the city nor by its acts to place West in a position to divert the fund. The issuance of the negotiable certificates gave him this opportunity, and if loss ensued because thereof, defendant was liable. (*Sims* v. *United States Trust Co. of New York,* 103 N. Y. 472; *Potts & Co.* v. *Lafayette National Bank,* 269 id. 181, 186; *Wagner Trading Co.* v. *Battery Park National Bank,* 228 id. 37, 42; *Matteawan Mfg. Co.* v. *Chemical Bank & Trust Co.,* 244 App. Div. 404, 412.)

Defendant did profit in the sum of $255.80 interest which would have accrued had the city funds represented by the 271 certificates been deposited in the regular city accounts, and it received payment of a debt (the overdraft) from the proceeds of one of these certificates which West deposited to his personal account. According to my view of the case, the question of notice to the defendant that West was a thief is not of great importance, yet I do believe that it was placed upon inquiry through the transfer of moneys earmarked as trust funds in the cemetery account to the general fund account of the city; also through West's conduct in connection with certificates of deposit, some being cashed the day they were issued, the majority within two or three days after issuance, the proceeds of others being deposited in his personal account and, of course, if it was placed upon inquiry, it was chargeable with knowledge of whatever an investigation would have disclosed.

As to acquiescence by the city in West's irregularities, it does not appear that defendant ever acquainted any official of the city with the issuance of the certificates of deposit or the withdrawals from the cemetery accounts, and no record of these transactions was found in the treasurer's office. It does appear that an examiner from the State Comptroller's office believes that the members of

the common council were not exhaustive in their examination and audit of the treasurer's report, but this statement of a belief in a report is not evidence of a fact. It also appears that the city clerk at the time of the trial did not find records relating to the audit of the accounts of the city treasurer by the common council, but this does not establish the fact that no audit was made. The facts here presented do not make *National Surety Co.* v. *Manhattan Co.* (*supra*) or *Potts & Co.* v. *Lafayette National Bank* (*supra*) controlling.

According to my computation the judgment should be for $58,416.24. The plaintiff, however, by its requests to find asks for seventy-three cents less. This figure will be adopted.

The judgment of nonsuit should be reversed on the law and facts, with costs, and judgment for plaintiff directed, with costs.

RHODES and HEFFERNAN, JJ., concur; CRAPSER, J., dissents, and votes to affirm; McNAMEE, J., not voting.

Judgment reversed on the law and facts, with costs. Judgment in favor of the plaintiff directed for the sum of $58,415.51, with interest thereon in accordance with the direction hereinafter contained, with costs.

The court reverses the following findings of fact contained in the decision: Numbers 17, 26, 27, 28, 29, 30 and 35, and modifies finding 16 so far as it imports that the title of the funds in the cemetery accounts was not in the city of Hudson, and in so far as it suggests that the deposits were within the custody of the cemetery commission. The portion thereof which states that West, as treasurer, " kept no record " of the cemetery accounts in his office as city treasurer, is affirmed. The portion of finding 33 which states: " The common council of the city made no examination, certification or audit of any such report " is reversed. The findings of fact which appear in that part of the decision captioned " Conclusions of Law " are reversed. The following of the plaintiff's requests to find are found: Numbers 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 36. Finding 34 is modified by striking therefrom the words " misappropriated by West " and by substituting therefor the following, " Withdrawn in violation of the contract under which defendant acted as city depository," and number 39 is modified by striking therefrom the words " concealed from " and substituting therefor " not disclosed."

The court makes the following new finding: " That plaintiff is entitled to interest upon the amount of the judgment in accordance with paragraphs Second, Third and Fourth in that portion of plaintiff's requests to find which is captioned ' Conclusions of Law.' "