155 N.J. Super. 381 (1977)
382 A.2d 958
FEDERAL DEPOSIT INSURANCE CORPORATION, LIQUIDATOR OF THE BANK OF BLOOMFIELD, FORMERLY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
PIONEER STATE BANK, A BANKING INSTITUTION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 29, 1977.
*386 Messrs. Parsons, Canzona, Blair and Warren, attorneys for plaintiff (Mr. John Warren, Jr., of counsel).
Messrs. Giordano, Halleran & Crahay, attorneys for defendant (Mr. John R. Orlovsky, of counsel).
YANOFF, J.C.C., Temporarily Assigned.
The issues herein arise as the result of the insolvency of the Bank of Bloomfield (Bloomfield).
On January 10, 1976 the Commissioner of Banking of New Jersey, by reason of such insolvency, took possession of the business and property of Bloomfield. On the same day the Commissioner transferred certain of the assets of Bloomfield to First National State Bank of New Jersey (assuming bank), which assumed some of the liabilities of Bloomfield, primarily to depositors, and to Federal Deposit Insurance Corporation (FDIC), which agreed to indemnify assuming bank and hold it harmless from specified claims. Among the assets transferred by the Commissioner to FDIC were two certificates of deposit made by defendant, Pioneer State Bank (Pioneer), each in the amount of $100,000, one due December 1, 1975 and the other December 30, 1975.
FDIC sues to recover upon these certificates.
Pioneer counterclaims for the sum of approximately $300,000 by reason of an agreement dated June 19, 1975 arising from the sale of machinery leasing agreements (also loans) by Bloomfield to Pioneer for the sum of $589,068.20. This sale was "with recourse" under an agreement in which Bloomfield undertook to repurchase any loan delinquent for 60 days and to indemnify Pioneer for losses resulting from such loans. The minutes of Bloomfield make no reference to the repurchase agreement. However, the minutes of May 27, 1975 reflect the considerations which motivated the board of that bank in authorizing its president to sell some of the bank's assets. The figure that Mr. Prodan, president of the bank, mentioned at that meeting as attributable to assets to be sold was $839,000. As to these he stated that Bloomfield *387 had already taken the better part of the interest attributable thereto so that it would make a profit, presumably on a sale of $839,000 of assets, of $48,848.62. The second consideration was that the transaction would supply Bloomfield with cash for other loans. At the meeting Prodan pointed out that the large banks would not deal with Bloomfield, but indicated that Pioneer would enter into the transaction. The result was passage of a resolution "for the proposal of the sale of the portfolio, as outlined, and leave it to Mr. Prodan to work out."
Both parties move for summary judgment on the basis of affidavits which set forth the foregoing. Pioneer bases its claim upon breach of Bloomfield's repurchase agreement. It asserts, also, a "banker's lien" upon funds represented by the certificates of deposit. In response FDIC urges that the repurchase agreement is invalid. Both state and federal law are advanced in support of this contention.
The argument under New Jersey law has two aspects. One is that N.J.S.A. 17:9A-213.1 renders illegal all bank guaranties, citing New Jersey Bank v. Palladino, 146 N.J. Super. 6 (App. Div. 1976), certif. den. 73 N.J. 64 (1977).[1] Another is that Pioneer failed to honor the certificates of deposit, in violation of the "midnight deadline" rule (N.J.S.A. 12A:4-302). Pioneer, in turn, relies upon that aspect of Palladino which holds the guarantying bank liable on equitable principles for benefit obtained.
N.J.S.A. 17:9A-213.1 reads:
Except as in this act or otherwise by law provided, no bank or savings bank shall have power to guarantee the obligations of others; or to insure or indemnify against the acts, omissions, undertakings, liabilities or losses of others. [emphasis added]
*388 The facts in Palladino were that Palladino was indebted to the First State Bank of Hudson County in the sum of $60,000. He borrowed $100,000 from the New Jersey Bank on the security of a guaranty executed by the First State Bank. He used the proceeds of the loan to reduce his indebtedness to the First State Bank. On default of his obligation to the New Jersey Bank that bank sought payment from the First State Bank. The trial judge entered judgment against both Palladino and the First State Bank. The Appellate Division reversed, holding that the guaranty was "an illegal act and void." (at p. 13) It held also that the defendant bank was not estopped to assert the defense of illegality. Additionally, it ruled:
However, the application of equitable principles may prevent one party to such a transaction from retaining a benefit or unfair advantage over another received as a result thereof. Therefore, if defendant-bank received a benefit from the illegal transaction, it should be required to repay the sums so received. [at 14]
It is significant that in this transaction the guarantying bank incurred a liability which did not involve assets which it already had and which it was selling.
Invoking federal law, FDIC cites 12 U.S.C.A. § 1819, which provides in part that "[a]ll suits of a civil nature at common law or in equity to which the [FDIC] shall be a party shall be deemed to arise under the laws of the United States * * *," and 12 U.S.C.A. § 1823(e), second paragraph, which reads:
No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank.
*389 Two issues can be disposed of readily. FDIC cannot be held liable for an affirmative recovery on the counterclaim by Pioneer. It had no dealings with Bloomfield. It acquired some, but by no means all, of Bloomfield's assets by transfer from the Commissioner. It is not the successor, receiver or liquidator of that bank. Nor is there a contractual provision by which it assumed any liability of Bloomfield; its undertakings run only to the First National State Bank.
Whether Pioneer violated the midnight deadline rule is not significant. If it did not pay the certificates of deposit, FDIC has a civil claim against it which is no stronger than its suit on the obligations created by the terms of the certificates. FDIC's argument that Pioneer's failure to observe the midnight deadline rule contemporaneously with the acquisition of the asset constituted a conversion, is not meaningful. The claim on the certificates of deposit is no more than a chose in action which Pioneer could satisfy out of its general assets. Pioneer had nothing specific of Bloomfield's which it could convert.
It is important to determine whether Pioneer has a right of set-off against the certificates of deposit. I conclude that it does. A bank has a right of set-off against all monies or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank. Hudson United Bank v. House of Supreme, 149 N.J. Super. 153, 156 (Ch. Div. 1977); Marmon Fanning Co. v. People's Nat'l Bank of Elizabeth, 106 N.J. Eq. 170, 173 (E. & A. 1929); 5A Michie, Banks and Banking (rev. perm. ed. 1973), § 114 at 300. This is commonly referred to as a "banker's lien," although technically it is not a lien, but an application of payment. If regarded as a lien, it is a "possessory lien," only entitling the bank to retain possession of the deposit for application of a proper set-off. 5A Michie, supra at 304-305.
The right to set-off arises only when the deposit is general, i.e., in the usual course of business without restriction. In such case the deposit becomes the property of *390 the bank and the depositor becomes a creditor of the bank for the amount deposited. Maurello v. Broadway Bank & Trust Co., 114 N.J.L. 167, 172-173 (E. & A. 1934); 10 Am. Jur.2d, Banks, § 360 at 320 (1963).[2]
To establish a right to set-off, three conditions must be satisfied: the fund to be set off must be the property of the debtor, the fund must be deposited without restrictions, and the existing indebtedness must be due and owing. 5A Michie, Banks and Banking, § 115a, at 306. In addition, there must be a mutuality of obligation between the debtor and his creditor, as well as between the debt and the fund on deposit. John Wills, Inc. v. Citizens Nat'l Bank of Netcong, 125 N.J.L. 546 (E. & A. 1940). As successor to Bloomfield's rights in the certificates of Deposit, FDIC took, subject to any set-off against Bloomfield. Cf. Tumarkin v. First National State Bank of N.J., 142 N.J. Super. 304 (App. Div. 1976), certif. granted 72 N.J. 459 (1976). A certificate of deposit is a written acknowledgement by a bank of the receipt of a sum of money on deposit with the bank which the bank promises to pay, creating a debtor and creditor relationship. 10 Am. Jur.2d, Banks, § 455 at 426 (1963). There are normally no extra conditions setting aside the depositor's specific funds, and there were no such contractual conditions in the present case. Although no New Jersey case speaks to this issue, since no special condition was attached to the certificates in this case, I conclude that the funds deposited became part of the bank's general assets and created only a debtor-creditor relationship. Other jurisdictions have so held. See Mid-City Nat'l Bank of Chicago v. Mar Bldg. Corp., 33 Ill. App.3d 1083, 339 N.E.2d 497 (App. Ct. 1975); United States Nat'l Bank of Galveston, Tex. v. Madison Nat'l Bk., 355 F. Supp. 165 (D.D.C. 1973), aff'd 160 U.S. App. D.C. 149, 489 F.2d 1273 (D. *391 C. Cir.1974); Fidelity and Cas. Co. v. Farmer's Nat'l Bk., 160 Misc. 510, 290 N.Y.S. 895 (Sup. Ct. 1936), rev'd on other grounds, 249 App. Div. 348, 293 N.Y.S. 8 (App. Div. 1937); Commissioner of Internal Revenue v. Ames Trust & Savings Bank, 185 F.2d 47 (8 Cir.1950); 5B Michie, op. cit., c. 9, § 313 at 235.
It appears from the facts set forth that Pioneer has fulfilled all conditions precedent establishing a right to set off the funds on deposit if Bloomfield's guaranty is a valid obligation.
In support of its position Pioneer cites a long line of decisions in both federal and state courts which hold that a bank may make a guaranty in the ordinary course of its business, as distinguished from guaranties for accommodation. Some of the cases rely upon the incidental powers provision of the National Banking Act, now 12 U.S.C.A. § 24: e.g., People's Bank v. Nat'l Bank, 101 U.S. 181, 25 L.Ed. 907 (1880); Thomas v. City National Bank of Hastings, 40 Neb. 501, 58 N.W. 943 (Sup. Ct. 1894); Dunn v. McCoy, 113 F.2d 587 (3 Cir.1940). Most of the decisions find authority to guaranty in the common law: e.g., Clements v. Citizens' Bank of Booneville, 177 Ark. 1085, 9 S.W.2d 569 (Sup. Ct. 1928); J.L. Mott Iron Works v. Kaiser Co., 131 S.C. 394, 103 S.E. 783 (Sup. Ct. 1920), aff'd 258 U.S. 240, 42 S.Ct. 286, 66 L.Ed. 593 (1922); Allis-Chalmers Mfg. Co. v. Citizens' Bank and Trust Co., 3 F. 2d 316 (E.D. Idaho 1924); Modoc County Bank v. Ringling, 7 F. 2d 535 (9 Cir.1925). An extensive collection of the cases in both federal and state courts is found in 4 Michie, op. cit., c. 7, § 44 at 75-81 (1971); 10 Am. Jur.2d Banks, § 299 at 267 (1963); 9 C.J.S., Banks and Banking, § 186 at pp. 399-403 (1938). Only a few cases have held bank guaranties ultra vires. International Harvester Co. of America v. State Bank of Upham, 38 N.D. 632, 166 N.W. 507 (Sup. Ct. 1918); Gardiner Trust Co. v. Augusta Trust Co., 134 Me. 191, 182 A. 685 (Sup. Jud. Ct. 1936); Federal Land Bank of St. Paul v. Crookston Trust Co., 180 Minn. *392 319, 230 N.W. 797 (Sup. Ct. 1930). These, however, involved facts dissimilar to those here and recognized the power of a bank to make guaranties incidental to the disposal of paper which it owns and sells in the course of its own business.
The general rule to be gathered from the cases is that a guaranty with respect to the collectibility of assets transferred by a bank has generally been considered enforceable if the bank owns the assets and transfers them incidental to its own business.
N.J.S.A. 17:9A-213.1 is part of a comprehensive revision of banking law enacted by the Banking Act of 1948. Among the powers conferred upon a bank is (N.J.S.A. 17:9A-24(12)):
* * * to exercise all incidental powers, not specifically enumerated in this act, which shall be necessary or convenient to carry on the business of the bank or savings bank; * * *.
The meaning of a statute must be determined by considering it as a whole. In the words of Judge (now Justice) Pashman dealing with this very statute in Hudson Cty. Nat'l Bank v. Provident Institute for Savings, 80 N.J. Super. 339 (Ch. Div. 1963), aff'd 44 N.J. 282 (1965):
* * * it is quite clear that the legislative intent is not to be fractionalized, and a statute which purports to encompass such a large and vital area as the business of banks and banking should be read as a whole with reference to the system of which it is a part. [at 348]
Courts will assume, also, that the Legislature is conversant with its own legislation and judicial construction placed thereon. See, e.g., Brewer v. Porch, 53 N.J. 167, 174 (1969); Petition of Keogh-Dwyer, 45 N.J. 117, 120 (1965); Barringer v. Miele, 6 N.J. 139, 144 (1951). In William H. Goldberg & Co. v. Div. of Employment Security, 21 N.J. 107, 113 (1956), our Supreme Court said that in construing a statute with a parallel federal enactment it would "assume that the legislature acted with knowledge of the existing provisions of the related federal statute." In *393 Lullo v. Int'l Ass'n of Fire Fighters, 55 N.J. 409 (1970), Justice Francis, for the court, dealt with the relationship between the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., and the federal Labor Management Relations Act, 29 U.S.C.A. § 159(a), the language of which had been adopted by the New Jersey statute, saying:
Further, for purposes of judicial interpretation in a context such as is presented to us here, such legislative approval brings to the fore the well known tenet of statutory construction that the experience and the adjudications under the copied act were probably accepted as an intended guide for the administration of the later act. See 2 Sutherland, Statutory Construction (3d ed. 1943) § 5209, p. 551 [at 424]
The scope of a bank's right to guaranty under its incidental powers is illustrated by Trust Company of New Jersey v. Jefferson Trust Co., 14 N.J. Misc. 656 (Sup. Ct. 1936). Defendant there together with 26 other banks, entered into an agreement to assume and secure the payment of the liabilities of a bank which was in "precarious financial condition," in order to keep public confidence in banks in Hudson County and prevent runs on other banks, including defendant. A motion was made to strike the complaint on the ground that the agreement was ultra vires. In denying the motion the trial judge relied upon the provisions of the statutes then in force conferring broad general powers upon banks, stating:
* * * Chapter 27 (Pamph. L. 1920; Cum. Supp. Comp. Stat. 1911-1924, p. 3745, § 221-6a, 1), an act concerning trust companies, provides in part that in addition to the general powers granted to do business a trust company "shall have all such powers as shall be necessary to carry on the business of banking." Trust companies are also given the general powers contained in the Corporation act (Pamph. L. 1896, ch. 185, p. 278; 2 Comp. Stat., p. 1599 § 2) which provides in part "every corporation, its officers, directors and stockholders, shall possess and exercise all the powers and privileges contained in this act, so far as the same are necessary or convenient *394 to the attainment of the objects set forth in such charter." * * *

* * * * * * * *
The federal statutes relating to the powers of national banks are quite similar to the laws of New Jersey concerning the powers vested in banks. Title 12 U.S.C.A., § 24, provides in part besides the general powers granted "all such incidental powers as shall be necessary to carry on the business of banking." [at 661]
Notably, this decision relies upon cases of the same general tenor as those to which reference has been made. In his opinion Judge Brown stated:
The agreements referred to in the complaint in the instant case were evidently fairly and honestly made for a purpose that was clearly within the corporate powers of the group. They were based on a consideration of the highest value to the defendant as well as other members of the group. In the making of the agreements, in the light of the conditions then existing, reasonable judgment and wisdom was [sic] exercised. The benefits and protection were for all the member banks. The agreements are not void as against public policy but consistent with public policy. [at 664]
Accord, McCoy v. Adams, 29 F. Supp. 815 (E.D. Pa. 1939); see O'Connor v. Bankers Trust Co., 159 Misc. 920, 289 N.Y.S. 252 (Sup. Ct. 1936); contra, Gardiner Trust v. Augusta Trust, supra.
The words in § 213.1, "except as in this act or otherwise by law provided," have reference to such things as the power to guaranty for one year certain payments by a bank's customers (§ 25(3)), to guaranty signatures and endorsements (§ 24(2)), to extend credit through the use of credit cards by arrangement with vendors (N.J.S.A. 17:9A-25.5 (A) (7)). It must also have reference to the incidental powers provision. How otherwise could a bank be expected to deal in such things as bonds or notes secured by mortgages, "balances due on conditional sales, and other evidences of debt for its own account, or for the account of its customers" which it is expressly empowered to buy and sell by § 25(1)? Indeed, in this very case, assuming bank assumed *395 liability for the deposits with Bloomfield, thereby guarantying their payment. Can it reasonably be argued that such assumption is prohibited by § 213.1? And the power to assume such liability can be found only under the incidental powers clause because it can be found nowhere else in the statute.
In the light of the foregoing, what is the effect of Palladino, supra? Certainly, it cannot be read as holding that all guaranties by banks are void. The plain language of § 213.1, coupled with the incidental powers provision and the meaning which must be ascribed to it under accepted canons of statutory construction, compel the conclusion that at least some guaranties necessary to engage in the banking business are not prohibited. This conclusion may be reached even though it be conceded that some of the cases cited above interpreting incidental power clauses would be decided differently in a jurisdiction which enacted the equivalent of § 213.1 and followed Palladino. What Bloomfield did was to guaranty in order to dispose of assets for legitimate banking purposes. By so doing, it did not add to its risk of loss. That risk was inherent in its acquisition of the leasing agreements. If Bloomfield had not sold the leasing agreements, it would have been exposed to the risk of default with respect to them. Therefore, from an accounting standpoint, the possibility that its liabilities would increase was not enhanced by the guaranty to Pioneer. Wherever the line between guaranties which are permitted and guaranties which are prohibited may be drawn, clearly it should not be drawn on the side of invalidity in a situation such as this. The difference between this case and Palladino is that in Palladino the bank increased its risk of loss by its guaranty, whereas in this case it did not.
I conclude, also, that FDIC's reliance on 12 U.S.C.A. § 1823(e) already quoted is misplaced. In support of its argument it cites D'Oench, Duhme & Co. Inc. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In D'Oench a bank took a note with a *396 notation thereon that it was not to be enforced. Upon the bank's insolvency FDIC received the note as one of its assets. The issue was whether the note was enforceable. The court held that the note was an asset enforceable by FDIC. However, the Justices differed as to their reasons for the decision. Justice Douglas relied upon the general policies of the Federal Reserve Act, 12 U.S.C.A. § 264(s). Justice Frankfurter relied upon the Missouri law of estoppel. Justice Jackson, in his concurring opinion, pointed out that no federal statute invalidated the transaction, and relied upon an underlying doctrine of estoppel not dependent upon the application of state law. § 1823(e) was enacted in 1950, apparently to clear the uncertainty engendered by D'Oench. In the debate (86 Cong. Record 10731 (1950)) Representative Walter said:
Mr. Chairman, under section 13(e) of this measure as amended certain conditions for the first time are imposed upon a bank in the event agreements are entered into between customers of the bank and the bank. Prior hereto and up to the time of an unfortunate interpretation of the law it was believed that all legal agreements entered into by the bank and obligor were binding on the Corporation. Under the language of the bill, this agreement must be entered into simultaneously with the recording and other conditions. [Emphasis supplied]
Clearly, the statute is intended to apply only to secret agreements connected with the acquisition of assets. The agreement here involved the disposition of assets. The statute is, therefore, not applicable. Additionally, a letter from plaintiff's counsel to the court, dated October 25, 1977, indicates that FDIC in this case knew of the repurchase agreement when it acquired Bloomfields assets.
The result is that summary judgment will be entered in favor of Pioneer.
Completeness requires mention of Pioneers argument that it should prevail by "the application of equitable principles" which, in Palladino, supra, resulted in a judgment against the guarantying bank to the extent of its benefits *397 from traceable funds received as a result of the guaranty. Prior to the enactment of N.J.S.A. 14A:3-2, which now sharply restricts the defense of ultra vires, that defense was barred where the corporation benefited from the transaction. See Ross v. Realty Abstract Co., 50 N.J. Super. 147, 154 (App. Div. 1958). It is not clear what the effect of N.J.S.A. 14A:3-2 is upon banking corporations. However, the ruling in Palladino makes it apparent that the Appellate Division was unwilling to apply a general rule of estoppel which would have validated the guaranty. Since in this case FDIC received no benefits from the original transaction, I conclude that the equitable principles doctrine enunciated in Palladino is inapplicable.
NOTES
[1] Under date of May 3, 1977, the order denying certification was vacated and the petition for certification granted, 74 N.J. 286 (1977). On July 10, 1978, the Appellate Division decision in Palladino was reversed by the Supreme Court, 77 N.J. 33 in a decision holding that the obligation of the First State Bank of Hudson County was an enforceable letter of credit.
[2] Where the depositor delivers funds to the bank's possession, to be kept separate and distinct from the bank's general assets, a special deposit results.