[Civil No. 1575.  Filed May 8, 1918.]

[172 Pac. 656.]

P. PASTENE & COMPANY, INC., a Corporation, Appellant, v. FIRST NATIONAL BANK OF NOGALES, a Corporation, Garnishee, Appellee.

1. BANKS AND BANKING — APPLICATION OF DEPOSITS TO DEBTS DUE BANK.—A bank and its depositor could validly agree, as a consideration for further credit to the depositor, that the bank might apply all funds from whatever source received to the depositor's account, to the satisfaction of any indebtedness due or to become due from the depositor.

2. CARRIERS—BILLS OF LADING—RIGHTS OF TRANSFEREE.—Where a borrower, being heavily indebted to a bank, had agreed that the proceeds of shipments by it were to be applied on such indebtedness and the borrower had sent the bank a draft on consignee of goods sold with bill of lading attached, the bank, since it had the right to hold the bill of lading as collateral security for payment of the draft, had a special interest in the consigned property to the extent of the amount of the draft, taking precedence over an attachment under writ of garnishment on judgment against the shipper.

[As to assignees of bills of lading and their rights and liabilities thereunder, see note in 105 Am. St. Rep. 332.]

APPEAL from a judgment of the Superior Court of the county of Santa Cruz. W. A. O'Connor, Judge. Affirmed.

Mr. John H. Campbell, for Appellant.

Messrs. Barry & Barry, and Mr. S. M. Franklin, for Appellee.

FRANKLIN, C. J.—The appellant had a judgment for a large amount of money against M. James & Co., Successors, and Augustin Beraud and Emilio Beraud, which judgment

remaining unsatisfied, a writ of garnishment was sued out, and on the tenth day of October, 1915, served upon the First National Bank of Nogales, the appellee, requiring it to answer under oath "what, if anything, it is indebted to the said M. James & Co., Successors, and Augustin Beraud and Emilio Beraud, and was when the writ was served upon it, and what effects, if any, of the said defendants it has in its possession, and had when the writ was served, and what other persons, if any, within its knowledge, are indebted to the said M. James & Company, Successors, and Augustin Beraud and Emilio Beraud, or have effects belonging to them in their possession." In due course of the proceedings, an issue in garnishment was tendered as required by the statute, and, after a trial thereof, the court rendered judgment in favor of the garnishee with costs, including the allowance of attorney's fees.

M. James & Co., Successors, is a Mexican corporation and was engaged in moving the garbanzos (chic peas) crop of Mexico via the port of Nogales to New York. In this pursuit, it did its banking business with the First National Bank of Nogales, the appellee, and was given a liberal credit by the bank. In the course of time its account was overdrawn, and it became indebted to the bank in a large amount of money for loans and overdrafts. In this state of affairs, and on August 14, 1915, the bank refused to honor its checks. It being represented, however, that this attitude would destroy the business of M. James & Company, Successors, because the company would be unable to move the garbanzos crop and pay its indebtedness to the bank, the latter agreed to and did lend the company an additional $45,000 in gold, evidenced by its three notes, each for $15,000. In consideration of these "forced loans" as the bank terms them, and the extension of further credit, it was expressly agreed between the parties that all moneys paid or deposited with the bank or received by the bank from the garbanzos, or any other source, for the account of M. James & Co., Successors, should be applied to the payment of the indebtedness and the open current account as it fluctuated from time to time. Also an instrument in the Spanish language was executed by Augustin Beraud, representing M. James & Co., Successors, and Otto H. Herold, representing the First National Bank of Nogales. The effect of this instrument is somewhat obscure, but whatever be its purport, whether it may be considered security or merely

an agreement to give security, it is clear that it is not for any specific indebtedness. It is for any balance that may appear in the current account at the time of the execution of the instrument or in the future. In substance, it recites:

"With the object of guaranteeing to the said First National Bank the payment of the balance in its favor, which may be shown in the account current carried with that institution now and in the future, he pledges for the payment of said balance the referred to one hundred shares of the Compania Industrial del Pacifico S. A., as well as the properties known as 'El Represo' previously described and bounded; obligates himself that the firm M. James & Co., Successors, which he represents, shall transfer said stock and convey said land to the First National Bank of this place, or the persons it may designate for the debit balance which may appear in the said current account."

Whatever it may be, the bank never realized anything on account of it. At the trial of the issue in garnishment, the evidence was undisputed that M. James & Co., Successors, was then indebted to the garnishee in a sum exceeding $50,000 in gold. Whether or not there were any funds in the bank subject to the execution of the judgment of appellant against M. James & Co., Successors, depends upon the right of the bank to apply all moneys received by it for the account of M. James & Co., Successors, to the extinguishment of the indebtedness to the bank. Under the facts of this case, it seems too plain for argument that it had this right. The bank and appellant occupied the relation of debtor and creditor, with mutual demands existing between them. After stating the account and a satisfaction of the cross-demands, a large amount of indebtedness is due the bank on account of credit extended to appellee. "It may be stated as a general rule that, when a depositor is indebted to a bank, and the debts are mutual—that is, between the same parties, and in the same right—the bank may apply the deposit, or such portion thereof as may be necessary, to the payment of the debt due it by the depositor, provided there is no express agreement to the contrary, and the deposit is not specifically applicable to some other particular purpose." 3 R. C. L., Banks, par. 217. Whatsoever the right of the bank may be called is not of much moment. Whether it be a lien or a right of setoff, under the particular circumstances, the practical effect is the

same. The reason for it is that the bank gives credit to the depositor by allowing overdrafts and permitting paper to become overdue, on the faith of the general deposit. It is then but natural and just that the bank be permitted to apply such general deposit to the satisfaction of the past-due indebtedness. Unless there be agreement to the contrary, this right may, of course, be waived, or it will be denied, where any specific past-due indebtedness is fully protected by other collateral security.

The appellee is not relying upon its general authority, however, but upon a special authority from M. James & Co., Successors. The bank knew of the financial straits of its depositor. To protect the payment of past-due loans and overdrafts, the bank was forced to extend further credit to the company, so that the garbanzos crop could be moved out of Mexico and the indebtedness satisfied. This was the only hope for M. James & Co., Successors, to satisfy its indebtedness to the bank. The company had no money with which to do this and was facing bankruptcy. As a consideration for further credit, the bank exacted and was given the authority to apply all funds from whatever source received to the account of M. James & Co., Successors, to the satisfaction of any indebtedness due or to become due. In addition, the instrument mentioned was executed to like effect. The bank being thus vigilant to protect itself, it is not apparent upon what ground the court would be justified in gathering the fruits of such vigilance for the benefit of appellant.

On the trial of the issue in garnishment, it developed that M. James & Co., Successors, a short time before the writ of garnishment was served, had consigned a carload of garbanzos, of the value of $5,712 to Santamaria, Saenz & Co. M. James & Co., Successors, drew a draft on Santamaria, Saenz & Co., for the value of this shipment of garbanzos in favor of the appellee. This draft, with a bill of lading for the garbanzos attached, was sent to appellee. The appellee presented the draft for payment, and delivered the bill of lading to Santamaria, Saenz & Co. The latter, in its account with the consignor of the garbanzos, had a setoff against the draft which was in process of settlement when the writ of garnishment was served. A few days afterward the amount of the draft, less the setoff, was paid to appellee, and by it credited on the indebtedness of M. James & Co., Successors.

With this credit allowed, M. James & Co., Successors, was still indebted to the bank in a sum approximating $50,000. It is contended that the amount paid on this draft should have been set forth in the answer of the garnishee as a debt due M. James & Co., Successors, and subject to the execution of appellant's judgment. M. James & Co., Successors, was enabled to ship the garbanzos because of the credit extended to it by appellee, and with the express agreement that the proceeds of such shipments were to be applied on the indebtedness.

It is argued that because appellee had the bill of lading in its possession, it had the carload of garbanzos in its possession; that the bill of lading was symbolical of the carload of garbanzos; and that the bank had no right to sell the garbanzos and appropriate the proceeds as against the attachment of plaintiff's writ of garnishment. But M. James & Co. had sold and shipped the garbanzos to Santamaria, Saenz & Co., and had assigned the bill of lading to the consignee. In whatever view that may be taken of the transaction, it is clear that the appellee was the owner of the draft; and, even if it be conceded that, under the circumstances of this case, the bill of lading was symbolical of the carload of garbanzos, under the specific agreement between appellee and M. James & Co., Successors, the bank had the right to hold the bill of lading of the garbanzos as collateral security for the payment of the draft. In this aspect it had a special interest in the consigned property to the extent of the amount of the draft, which will take precedence of the attachment by virtue of the writ of garnishment. It cannot be said that the bank was compelled to answer that it was indebted to M. James & Co., Successors, on account of the carload of garbanzos, when at the time M. James & Co., Successors, was indebted to the bank in an amount approximating $50,000. Some criticism is indulged against a report made by the appellee to the Comptroller of the Currency. It is not our province to ascertain if the methods of business or bookkeeping adopted by the appellee as shown in this report are in accord with the requirements of the Comptroller of the Currency. Such a matter is foreign to our jurisdiction. It is necessary only to observe that at the time the writ of garnishment was served and the answer of the garnishee made, the

undisputed evidence shows that M. James & Co., Successors, was indebted to appellee in a large amount of money.

In its answer, the appellee disclosed that it had in its possession two sealed envelopes and one sealed package belonging to M. James & Co., Successors, the contents of which were unknown. Before the trial, the appellee discovered that there were three of the sealed envelopes and one sealed package, all of which were by it produced in court. These packages were opened and found to contain: eleven pieces of gold amalgam; one $500 Mexican bank bill issued by the Banco de Jalisco; a Mexican gold doubloon minted in 1869; two packages of Mexican money, one containing $1,506, and the other $1,476, the same having been issued by the different factions at war in the republic of Mexico.

It is contended that the court erred in rendering judgment in favor of the plaintiff for the contents of the package and envelopes. There was no such judgment. There is nothing in the judgment which would prevent the appellant from proceeding to have this property found in the sealed envelopes and package subjected to the execution of its judgment. This property is subject to the order of the court.

Appellant objects to allowing the garnishee an attorney's fee because its return had successfully been controverted with respect to the two sealed envelopes. The answer in garnishment disclosed two sealed envelopes, when, upon the trial, it produced three sealed envelopes. The answer of the garnishee with respect to the number of sealed envelopes was not controverted. There was no issue as to this matter. The garnishee stated that it had two sealed envelopes, but before the hearing it discovered three sealed envelopes and produced them in court.

The controverted issue before the court was whether or not the bank was indebted to M. James & Co., Successors. The court found this issue in favor of the bank, discharging it as garnishee. In this it was fully justified by the record presented.

The judgment is affirmed.

CUNNINGHAM and ROSS, JJ., concur.

---

On right of bank to apply special deposit to an indebtedness of depositor, see notes in 30 L. R. A. (N. S.) 517; L. R. A. 1918A, 80.