149 N.J. Super. 153 (1977)
373 A.2d 438
HUDSON UNITED BANK, A NEW JERSEY BANKING CORPORATION, PLAINTIFF,
v.
HOUSE OF SUPREME, INC., A CORPORATION, BELA BLUMENFELD, EVA BLUMENFELD, GEORGE LOVAS AND MARIA LOVAS, DEFENDANTS, AND HOUSE OF SUPREME, INC., ET AL., PLAINTIFFS,
v.
HUDSON UNITED BANK ET AL, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 30, 1977.
*155 Mr. Melvin Greenberg appeared for Hudson United Bank (Messrs. Lowenstein, Sandler, Brochin, Kohl and Fisher, attorneys).
Mr. John J. Sheehy, receiver, appeared pro se.
No appearance was made on behalf of House of Supreme, Inc., Bela Blumenfeld, Eva Blumenfeld, George Lovas and Maria Lovas.
KENTZ, J.S.C.
This court entered a judgment for Hudson United Bank (bank) against the House of Supreme, Inc. *156 (House) and the individual defendants in the amount of $784,529 plus interest, based upon a default by House on its "with recourse" obligation on accounts sold directly to the bank, on House's default on its "Dealer Contract for Assignment of Paper," on various guarantees of dealer obligations and on the acceleration of the direct loans made to House caused by such default. The court determined that House was insolvent within the meaning of N.J.S.A. 14A:14-2 and appointed a statutory receiver thereunder.
The present controversy arises out of a motion made by the bank to amend the court's order and judgment to permit the bank to set off against the judgment certain monies deposited in various accounts of House and held by the bank. The accounts in question are the following: House of Supreme Reserve Account; House of Supreme Special Reserve Account; Central House of Supreme Furniture Reserve Account; House of Supreme Checking Account; Savings Account Certificate.
The bank contends that pursuant to N.J.S.A. 14A:14-8 and the decisional law it is permitted a set-off for all these accounts. The receiver disputes this and alleges that with the exception of the checking account, all of the above-mentioned accounts are "special deposits" and as such cannot be set off by the bank but rather must be turned over to the receiver.
Before the court addresses itself to the ultimate issue of whether the bank is entitled to set off the deposits against House's indebtedness to the bank, the court must first determine whether New Jersey law recognizes the general-special deposit distinction with regard to set-offs since the bank contends that our courts have consistently permitted set-offs of all deposits regardless of the nature of such deposit.
The general rule is that a bank has a right of set-off against all monies or funds in its possession belonging to a depositor to secure the payment of the depositor's indebtedness to the bank. McFarland v. Withers, 122 N.J. Eq. 167 (1937); Federal Trust Co. v. Conklin, 87 N.J. Eq. *157 185 (1916); see 5A Michie, Banks and Banking (rev. perm. ed. 1973), § 114, at 300, and cases cited therein. However, the weight of authority on the issue of set-offs by banks recognizes a distinction between general deposits and special deposits. This distinction arises as an exception to the general rule as a condition precedent to the accrual of the right of set-off in that before the fund can be set off it must have been deposited without restrictions and not have been a special fund. Joseph v. United of America Bank, 131 Ill. App.2d 434, 266 N.E.2d 438 (App. Ct. 1970); Feuer v. Peoples Bank, 43 N.Y.S.2d 32 (Sup. Ct. 1943), aff'd 268 App. Div. 809, 48 N.Y.S.2d 593 (App. Div. 1944), aff'd 294 N.Y. 748, 61 N.E.2d 746 (Ct. App. 1945); First Nat'l Bank of Schulenberg v. Winkler, 146 S.W.2d 201 (Tex. Civ. App. 1940), aff'd 139 Tex. 131, 161 S.W.2d 1053 (Com. App. 1942); Southwest Nat'l Bank v. Evans, 94 Okl. 185, 221 P. 53 (Sup. Ct. 1923); Conner v. First Nat'l Bank of Sedrowoolley, 113 Wash. 662, 194 P. 562 (Sup. Ct. 1921).
The general nature of deposits to which the right of set-off attaches arises when the customer deposits money in the usual course of business without any restrictions. However, these same funds become special deposits and the bank's right to detain them is controlled when there is a special agreement showing that set-off was not intended by the parties, or where the circumstances or the particular modes of dealing are inconsistent with its existence. See Michie, supra, § 118(a), at 321-322. Funds deposited in a bank for a special purpose which is made known to the bank or under a special agreement cannot be set off by the bank against a debt due to it from the depositor. In re Foutz, 271 F. Supp. 847 (W.D. Va. 1967); Avant v. U.S., 165 F. Supp. 802 (E.D. Va. 1958). Thus, it appears that deposits made by a customer become "special" by means of the contractual agreement or relationship between the customer and the bank.
Special deposits are immune from set-off by a bank because the right of set-off arises only when there is a mutuality of relationship between the customer and the bank. The bank and *158 the depositor each must occupy the relation of debtor and creditor and they must have rights to mutual demands. Stated otherwise, there must be a mutuality between the debtor and the creditor and between the debt and the fund deposited. Kaufman v. First Nat'l Bank, 493 F.2d 1070 (5th Cir.1974). This mutuality exists only in connection with general deposits but not with special deposits, for the customer can only draw on the former and therefore a bank can only retain the general deposits as a set-off should the customer be indebted to the bank.
In most jurisdictions the general-special deposit distinction as it relates to a bank's right of set-off is a well established rule of law. However, I have been unable to find any case in New Jersey dealing expressly with this rule. In examining the relatively few New Jersey cases on the right of set-off, it appears that our state at least implicitly recognizes the general-special deposit distinction. In Thomas v. Nat'l Bank of N.J., 16 N.J. Misc. 271, 198 A. 539 (D. Ct. 1938), the court did not need to characterize the funds in order to decide whether the bank was entitled to set them off, but nevertheless the court did implicitly recognize the distinction when it stated the general rule as to set-off as follows:
That a bank may, on the insolvency of a depositor before the maturity of his indebtedness to the bank, apply his general deposit to the payment of such indebtedness, is settled law in this state. [at 272; emphasis supplied]
In American Lumberman's Mut. Cas. Co. of Ill. v. Bradley Constr. Co., 127 N.J. Eq. 500 (1940), aff'd 129 N.J. Eq. 278 (E. & A. 1941), the general rule was similarly enunciated. The court in American implicitly recognized the general-special deposit distinction by alluding to the fact that the general rule does not permit a set-off against trust funds on deposit to the credit of the debtor as trustee, or monies in the depositor's general account held by him in trust where the bank has notice of that fact.
*159 Furthermore, since New Jersey courts acknowledged that before there can be a right of set-off there must be mutuality between the debt and the fund deposited, presumably they recognize the general-special deposit distinction, for there is no mutuality between the debt and a special deposit. Wills v. Citizens Nat'l Bank of Netcong, 125 N.J.L. 546 (E. & A. 1940).
Although our courts, in dealing with bank set-offs, have not used the rubric "general" and "special" deposits, they have implicitly recognized the distinction and have acknowledged that there are exceptions to the general rule that all monies of a depositor held by a bank are subject to the right of set-off. Therefore, I conclude that unless otherwise agreed, special deposits of a customer are ordinarily insulated from set-off by a bank against the customer's indebtedness to that bank.
I now consider whether the accounts in question are general deposits or special deposits. There is no dispute as to the checking account, for both parties agree that it consists of general deposits and is subject to the right of set-off by the bank. Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 113 Cal. Rptr. 449, 521 P.2d 441 (Sup. Ct. 1974).
With regard to the right of set-off as to the three reserve accounts, the receiver argues that the bank cannot set off these accounts because they are special deposits. Basically, the receiver contends that the reserve accounts are special deposits because (1) they were not deposited in the regular course of business; (2) they were to be used by the bank for the special purpose of repurchasing House's recourse paper, and (3) the monies contained therein were to be returned to House when all the recourse paper was paid. It is true that the reserve accounts appear to have some of the characteristics of special deposits. Were the three characteristics which the receiver notes the sole characteristics of the reserve accounts, these accounts might very well be immune from the right of set-off as special deposits. If the only purpose of the reserve accounts was to repurchase chattel *160 paper, the bank might not be permitted to set them off, as was the case in Smith v. Sanborn State Bank, 147 Iowa 640, 126 N.W. 779 (Sup. Ct. 1910). In Smith plaintiff placed with a bank a check under an express agreement that after paying certain specifically named debts, the remainder would be repaid to plaintiff when demand was made. The court there held that the bank could not appropriate the remaining funds to the discharge of other debts due to it from plaintiff. See also, Engleman v. Bank of America Nat. Trust, etc., Ass'n, 98 Cal. App.2d 327, 219 P.2d 868 (D. Ct. App. 1950); Lutz v. Williams, 79 W. Va. 609, 91 S.E. 460 (Sup. Ct. 1917).
The bank contends that the reserve accounts in question have additional characteristics by contract which renders them available for set-off by the bank. Since the right of set-off is based on the contractual relationship between the parties, the relevant contracts between the bank and House must be examined to determine whether the bank is entitled to a right of set-off. The provisions of the "Dealer Contract for the Assignment of Paper" which created these reserve accounts and govern their application specifically provide that the accounts are to be held by the bank and applied to the payment of any paper or any obligation of House to the bank, whether then due or not. It is clear that it was the contractual understanding between the parties that these reserve accounts were not "special deposits" as defined by the courts but rather as funds to be available to the bank should House renege on any of its obligations. A bank and a depositor can effectively agree that the bank may apply all funds of the depositor, from whatever source received to the depositor's account to the satisfaction of his indebtedness due or to become due. Pastene & Co. v. First Nat. Bank, 19 Ariz. 493, 172 P. 656 (Sup. Ct. 1918). The bank's right to apply the reserve accounts to the payment of all of House's debts is clearly authorized by the written agreement between the parties, whether the reserve accounts are characterized as special or general deposits. See Georgia Bank & Trust Co. *161 v. Hadarits, 221 Ga. 125, 143 S.E.2d 627 (Sup. Ct. 1965). House, when it agreed to the creation of the reserve accounts and permitted deposits to be made into those accounts, contemplated their use as security against default by it on any obligation owed to the bank. Therefore, the bank is entitled to set off these accounts against the whole debt owed by House, for it was so intended by the parties at the time of the creation of the accounts. Cotulla State Bank v. Herron, 191 S.W. 154 (Tex. Civ. App. 1916).
The receiver further argues that the savings certificate is held by the bank as collateral for an elevator loan and thus is held for a special purpose and not subject to set-off. Once again, the contractual arrangements between the parties indicate that the receiver's argument is without merit. The agreement establishing this account, as contained in a letter of consent to hypothecation dated November 9, 1972, indicates that the money held in the account was deposited with the specific understanding of the parties that it would serve as collateral security for each and every obligation and liability of House to the bank. The same principles and reasoning establishing the bank's right of set-off with regard to the reserve accounts are applicable to the saving certificate. Contractually, the bank is authorized to retain the savings certificate as a set-off against all the debts due to it by House.
For the foregoing reasons, the bank's motion to amend the judgment to permit the bank to set off the various accounts in question against the judgment is hereby granted.