In re PINEVIEW CARE CENTER, INC.

James J. CAIN, Trustee of Pineview Care Center, Inc., Appellant,

v.

Baruch MAPPA and United Jersey Bank/ South, N.A., successor in interest to Lenape State Bank, Appellees.

Civ. No. 92–2514.

United States District Court, D. New Jersey.

March 29, 1993.

Steven R. Neuner, Wizmur, Neuner & Ventura, Marlton, NJ, for James J. Cain, Trustee.

Joseph F. Riga, Drinker, Biddle & Reath, Princeton, NJ, for United Jersey Bank/South, N.A.

Joel R. Gluckman, Friedman Siegelbaum, Roseland, NJ, for Baruch Mappa.

## OPINION

BROTMAN, District Judge:

Presently before the Court is an appeal from an order of the United States Bankruptcy Court granting Appellees' motions for summary judgment. For the reasons set forth below, the Bankruptcy Court's decision is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In June 1987 United Jersey Bank South, N.A. ("UJB") made a $300,000 demand loan to Pineview Care Center, Inc. ("Pineview"). The loan was secured by a lien on all money Pineview deposited with UJB. In addition, the loan was guaranteed by Pineview's president, Baruch Mappa.

At the time the loan was made, Pineview's business was not faring too well. Its expenses consistently exceeded its revenues. UJB and Pineview began to discuss a schedule for the repayment of principal in August 1987. Pineview's revenue shortfall continued, however, and by the beginning of April 1988, none of the principal had been repaid.

Eventually, the loan was repaid with interest in three installments ("the Payments"). Pineview made the first Payment of $50,000 in April 1988 in the form of a check drawn on its business checking account with UJB. After further discussions, UJB and Pineview arranged to have the balance of the loan repaid by setoff. Once in May and once in June of 1988, Pineview deposited money into its checking account. After each deposit, UJB set off a portion of the balance of the loan from the deposited funds.

Pineview's business continued to deteriorate, and in January 1989 four of its creditors filed an involuntary Chapter 7 bankruptcy petition. The Bankruptcy Court entered an order for relief and appointed James J. Cain trustee ("the Trustee"). In November 1990 the Trustee filed an adversary action against UJB and Mappa, seeking to recover the Payments as preferences under 11 U.S.C. § 547(b).

After discovery, UJB and Mappa moved for summary judgment. The Bankruptcy Court granted their motion and dismissed the Trustee's complaint in its entirety 142 B.R. 677. The Trustee appealed. This Court has jurisdiction under 28 U.S.C. § 158(a).

## DISCUSSION

■ Section 547(b) gives a trustee the power to avoid a preferential transfer made before bankruptcy.[1] Its primary purpose is to foster equality of treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach its assets shortly before bankruptcy. *See generally* Benjamin Weintraub & Alan Resnick, *Bankruptcy Law Manual* ¶ 7.05, at 7–18 (3d ed. 1992). To that end, it allows a trustee to recover payments out of the ordinary course of business made within ninety days before the bankruptcy petition is filed.[2]

Creditors who are insiders,[3] however, are in a special position to thwart the goals of § 547(b). Insiders will generally be the first to recognize that a firm's financial condition is deteriorating. Insiders, moreover, can frequently control a firm's actions. Thus an insider could cause a firm to preferentially repay a loan he has made to the firm and then delay filing the bankruptcy petition until the ninety-day preference period has passed. *Id.* ¶ 7.05[2][d], at

---

1. 11 U.S.C. § 547(b) provides:

 Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if—

 (A) the case were a case under chapter 7 of this title
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. Transfers made in the ordinary course of business for debts incurred in the ordinary course of business are not avoidable. 11 U.S.C. § 547(c)(2).

3. If, like Pineview, the debtor is a corporation, an "insider" includes a director of the debtor, an officer of the debtor, a person in control of the debtor, or a relative of a director, officer, or person in control of the debtor. 11 U.S.C. § 101(31).

7-27. Section 547(b) addresses this problem by extending the preference period to a full year when the payment the trustee seeks to recover was made to or for the benefit of an insider.

In this case the Payments, which the Trustee alleges are avoidable preferences, were made to UJB, an outside creditor. The Payments were made more than seven months before the filing of the petition, well outside the ninety-day preference period applicable to outside creditors. Nevertheless, the Trustee argues that because Mappa, an insider, guaranteed UJB's loan to Pineview, the Payments are recoverable from both UJB and Mappa under the so-called *"Deprizio* doctrine." *See Levit v. Ingersoll Rand Fin. Corp. (In re Deprizio),* 874 F.2d 1186 (7th Cir.1989).

██ Under the *Deprizio* doctrine, a trustee can recover from an outside creditor a transfer made more than ninety days before the filing that is avoidable under § 547(b) because it produces a benefit for an inside creditor. A transfer by a firm to a bank to pay off a loan guaranteed by an insider of the firm produces a benefit for the insider. This is so because the insider has a "claim" against the firm and is therefore a "creditor" of the firm.[4] The insider has a "claim" because it has a contingent right to payment from the firm;[5] for if the firm defaults and the insider must pay off the firm's loan, the insider is entitled to recover its payment from the firm. Consequently, a transfer by the firm to the bank is "for the benefit of" a creditor (the insider) under § 547(b)(1), since every reduction of the firm's debt to the bank reduces the amount the insider will be obligated to pay the bank, should the firm default. The transfer is therefore avoidable under § 547(b)(4)(B) if it was made within one year before the filing of the petition. And it is recoverable from both the bank and the insider under § 550(a)(1), which pro-

vides that the trustee may recover an avoidable transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." The initial transferee is the bank; and the entity for whose benefit the transfer was made is the insider.[6] Thus, if the Payments in the instant case were avoidable preferences, under the *Deprizio* doctrine the Trustee could recover them from both UJB and Mappa.

The soundness of the *Deprizio* doctrine has divided the courts. *Compare Ray v. City Bank & Trust Co. (In re C-L Cartage Co.),* 899 F.2d 1490 (6th Cir.1990) (applying *Deprizio* doctrine) *with Block v. Texas Commerce Bank Nat'l Assoc. (In re Midwestern Cos.),* 102 B.R. 169 (W.D.Mo. 1989) (refusing to apply *Deprizio* doctrine). Neither the Court of Appeals nor a single district court in this Circuit has addressed the question. Although the Bankruptcy Court noted this lack of controlling precedent, it found it unnecessary to confront the issue. It held that even applying the *Deprizio* doctrine in this case, the Trustee could not recover the Payments. Because this Court agrees, it, too, declines to address the soundness of the *Deprizio* doctrine.

██ The Bankruptcy Court held that the first Payment of $50,000, made by means of a check drawn upon Pineview's checking account with UJB, was not an avoidable transfer. Under § 547(b)(5) a transfer is avoidable only if it enables a creditor to receive more than such creditor would receive under a Chapter 7 liquidation. A fully secured creditor is paid in full under Chapter 7. *See* § 506. Under the terms of the loan agreement between UJB and Pineview, UJB had a security interest in all money Pineview deposited with UJB. And at the time of the first Payment, Pineview had more than $50,000 on deposit. UJB was therefore fully se-

---

**4.** 11 U.S.C. § 101(10) provides that a "creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

**5.** 11 U.S.C. § 101(5)(A) provides that a "claim" means "right to payment, whether or not such

right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

**6.** 11 U.S.C. § 101(15) provides that the term "entity" includes "person."

cured as to the first Payment. As a result, the first Payment is not an avoidable transfer.[7]

 The Bankruptcy Court further held that the second and third Payments constituted valid prepetition setoffs under § 553.[8] Section 553 preserves the common law right to setoff prepetition mutual debts. *See Cohen v. Savings Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Management Corp.)*, 896 F.2d 54, 57 (3d Cir.1990). A setoff occurs when "parties that owe mutual debts ... state the accounts between them, subtract one from the other and pay only the balance." *Id.* A bank account balance constitutes a debt owed by the bank to the depositor. *See, e.g., Elsinore Shore Assocs. v. First Fidelity Bank, N.A. (In re Elsinore Shore Assocs.)*, 67 B.R. 926, 936 (Bankr.D.N.J. 1986). Consequently, a bank may appropriate funds in a borrower's deposit account by setting them off against the balance due on the borrower's loan. *See, e.g., Armstrong v. Dakota Bank & Trust Co. (In re Knudson)*, 929 F.2d 1280, 1284–85 (8th Cir. 1991). Although such setoffs bestow preferential advantages upon banks, "setoffs are accepted and approved because they are based upon long-recognized rights of mutual debtors." *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir.1979).

On appeal, the Trustee does not deny that because the second and third Payments were effected by setoff more than seven months before bankruptcy, none of the exceptions to the right of setoff set forth in § 553 directly applies. *See supra* note 8. The Trustee claims, however, that the second and third Payments are nevertheless recoverable. He points out that if Pineview had repaid its loan by writing two checks to UJB, those payments would be made out of the ordinary course during the preference period and would therefore be avoidable transfers under § 547(b). He argues that it would be anomalous to find that the Bankruptcy Code permits UJB and Mappa to circumvent § 547(b) by the simple expedient of having arranged the repayment of Pineview's loan by setoff. The Trustee contends that the deposits in May and June that created UJB's mutual debts to Pineview are recoverable because they "were preferential transfers separate from the subsequent setoff[s]." Appellant's Br. at 11.

 Although the Trustee's argument is not without force, it ultimately

---

7. Apparently, the Trustee no longer seeks to recover the first Payment.

8. 11 U.S.C. § 553 provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h)(2), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

must fail. Treating the deposits in May and June as avoidable transfers separate from the subsequent setoffs would be inconsistent with the language, structure, and history of the Bankruptcy Code. The Bankruptcy Code ("the Code") replaced the Bankruptcy Act of 1898 ("the Act"). Setoffs were previously governed by § 68 of the Act. Section 553 of the Code, which replaced § 68 of the Act, provides that "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt.*" (emphasis added). This language suggests that § 547 cannot be used to invalidate a setoff otherwise valid under § 553. *See Lee v. Schweiker,* 739 F.2d 870, 873 n. 4 (3d Cir.1984); *Eckles v. Petco Inc. (In re Balducci Oil Co.),* 33 B.R. 847, 852 (Bankr. D.Colo.1983).

Moreover, § 553(a)(3) specifically deals with the situation the Trustee alleges here: a prearranged build-up of a bank account in. anticipation of setoff. It provides for the denial of a setoff if "the debt owed to the debtor by such creditor was incurred by such creditor" within ninety days of the filing of the petition, and for the purpose of obtaining a right of setoff. In a case like this, the incurrence by a creditor of "the debt owed to the debtor by such creditor" means the debt .of a bank to a depositor created by a deposit. Thus, § 553(a)(3) addresses bank deposits made for the purpose of obtaining a right of setoff, yet invalidates them only when the deposits were made within ninety days of the filing of the petition. Nothing in the language or structure of § 553 suggests that this invalidation period ought to be extended to one year when the deposits benefit an insider.

Indeed, if under § 547 a deposit made in anticipation of setoff could be recovered as a preferential transfer, § 553(a)(3) would be unnecessary. A deposit in a bank account is a transfer within the meaning of the Code. *In re Prescott,* 805 F.2d 719, 729 (7th Cir.1986). As discussed above, § 547(b)(4)(A) defines as avoidable transfers payments for antecedent debts made out of the ordinary course within ninety days before bankruptcy. Bank deposits made in anticipation of setoff within ninety days before bankruptcy clearly fit this definition. Therefore, if such deposits constituted recoverable transfers under § 547 even when they are subsequently set off, § 553(a)(3) would be superfluous. It is well settled that "courts should avoid a construction of a statute that renders any provision superfluous." *Pennsylvania Dep't of Pub. Welfare v. United States Dep't of Health & Human Servs.,* 928 F.2d 1378, 1385 (3d Cir.1991).

Nor can the Court conclude that Congress simply "forgot" to address prearranged setoffs occurring outside the usual ninety day preference period, but within the one year preference period applicable to insiders. Under § 553(b) a trustee can avoid a prepetition setoff that occurs within ninety days of bankruptcy, whether or not prearranged, to the extent of any increase during those ninety days of the amount of the debt the creditor owes the debtor. *See supra* note 8. This "improvement in position" test was derived from § 547(c)(5), which governs the avoidability of transfers that occur as a result of a debtor's acquisition of additional inventory or receivables when a creditor has a floating lien on such after acquired collateral. H.R.Rep. No. 595, 95th Cong., 2d Sess. 185 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6145; S.Rep. No. 989, 95th Cong., 2d Sess. 91–92 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5877–78. Under § 547(c)(5) transfers within ninety days before bankruptcy are avoidable to the extent that the creditor's position was improved. But if the transfers were to an insider, this preference period is extended to one year. Congress's failure to incorporate into § 553(b) the extended preference period of § 547(c)(5) suggests that it was not seriously concerned about prepetition setoffs by insiders occurring more than ninety days before bankruptcy. When Congress wanted to, it knew how to extend the preference period to deal with the special problems posed by insiders; in the case of prepetition setoffs, it simply didn't see the need to do so.

Finally, the Trustee cites several cases in support of his argument that were decided before the enactment of the Code. Section 68 of the Act failed to address the situation in which a bank account is intentionally built up in anticipation of setoff.[9] Consequently, courts occasionally voided as preferences those setoffs exercised during the preference period that were made possible by deposits out of the ordinary course of business. *See, e.g., Herzog v. Mandan Sec. Bank (In re PRS Prods., Inc.)*, 574 F.2d 414, 418 (8th Cir.1978); *Katz v. First Nat'l Bank*, 568 F.2d 964, 969–70 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1250, 55 L.Ed.2d 771 (1978). But as discussed above, Congress specifically addressed the problem of prearranged setoffs when it replaced § 68 with § 553. In fact, § 553(a)(3) was intended to be a codification of existing case law. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 185 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6145. The Court concludes that the precedent established by the cited cases does not survive the enactment of the Code. "When Congress makes wholesale changes in the text and structure of the law, it is fatuous to pretend that a silent legislative history means that existing practices should continue unchanged." *In re Deprizio*, 874 F.2d at 1196.

 The Trustee next argues that the setoffs were invalid under New Jersey law. Section 553 does not create a right of setoff; it merely preserves the right of setoff available under state law. *See In re Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d at 57. The Trustee contends that under New Jersey law, the right of setoff attaches only to deposits made in the ordinary course of business. He argues that because Pineview's deposits in May and June were not made in the ordinary course of business within the

meaning of the Code, *see* § 547(c)(2), they were invalid under New Jersey law.

The Trustee's argument lacks merit. It is true that the two cases the Trustee cites in support of his argument state that the right of setoff arises only when the deposits are made "in the usual course of business." *FDIC v. Pioneer State Bank*, 155 N.J.Super. 381, 389, 382 A.2d 958 (1977); *Hudson United Bank v. House of Supreme, Inc.*, 149 N.J.Super. 153, 157, 373 A.2d 438 (1977). But, as the Trustee concedes, there are no cases interpreting or applying the phrase "usual course of business" in the context of deposits that are subsequently set off. Appellant's Br. at 26 n. 9. He suggests that the phrase ought to mean the same thing that the phrase "ordinary course of business" means under § 547(c)(2) of the Code. *Id.*

 The suggested interpretation is untenable. For a setoff to be valid under New Jersey law, there must be a mutuality of obligation between the debtor and the creditor. *Hudson*, 149 N.J.Super. at 157–58, 373 A.2d 438. This mutuality exists under New Jersey law only when the deposit account is "general" rather than "special." *Id.* at 158, 373 A.2d 438. An account is special if the funds are deposited only for a particular purpose made known to the bank—for example, for the payment of a business's payroll. *See, e.g., Alexander & Jones v. Sovran Bank (In re Nat Warren Contracting Co.)*, 905 F.2d 716, 718' (4th Cir.1990). Read in context, the phrase "usual course of business" is used in the cited cases merely to clarify the requirement that the a bank's right of setoff attaches only to deposits that are general. *See Pioneer*, 155 N.J.Super. at 389, 382 A.2d 958 ("The right to set-off arises only when the deposit is general, *i.e.*, in the usual course of business without restric-

---

9. Section 68 provided:

 a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

 b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the

estate and allowable under subdivision g of section 57 of this Act; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

tion."); *Hudson,* 149 N.J.Super. at 157, 373 A.2d 438 ("the right of set-off ... arises when the customer deposits money in the usual course of business without any restrictions. However, these same funds become special deposits and the bank's right to detain them is controlled when there is a special agreement showing that set-off was not intended by the parties....").

 Pineview's business checking account with UJB was not a special account. Under New Jersey law the nature of an account (and therefore the right of setoff) is governed by the contractual relationship between the depositor and the bank. *Hudson* 149 N.J.Super. at 160, 373 A.2d 438. Here, the loan agreement between Pineview and UJB specifically granted UJB "a right to setoff against and a lien upon all deposits of money" with UJB. Therefore, the setoffs were valid under New Jersey law.

The Trustee's remaining arguments were not asserted before the Bankruptcy Court. He is therefore precluded from raising them on appeal. *New Jersey Dep't of Envtl. Protection v. North Am. Prods. Corp.,* 137 B.R. 8, 13 (D.N.J.1992); *United Jersey Bank/Central v. Collated Prods. Corp. (In re Collated Prods. Corp.),* 121 B.R. 195, 205 n. 7 (D.Del.1990), *aff'd,* 937 F.2d 596 (3d Cir.1991). Accordingly, the decision of the Bankruptcy Court is affirmed.